UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTODISTRIBUTORS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONWIDE E&S SPECIALTY, et al.,<br><br>Defendants. | Case No. 21-cv-06204-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND TERMINATING AS MOOT PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 22, 23 |

This is an insurance coverage case. The insurer, Defendant Scottsdale Insurance Company, and the insured, Plaintiffs Autodistributors, Inc. and Steven M. Schneider, dispute whether an insurance policy covers claims brought against Plaintiffs in a third-party federal action in Florida such that Scottsdale had a duty to defend them in the action. The parties have filed cross-motions on the issue of the duty to defend. Defendants move for judgment on the pleadings and Plaintiffs move for partial summary judgment. Dkt. Nos. 22, 23.

For the reasons below, the Court **GRANTS** Defendants' motion on the issue of the duty to defend and **TERMINATES AS MOOT** Plaintiffs' motion on the same issue.[1] Scottsdale did not owe Plaintiffs a duty to defend under the insurance policy because any potential claims covered by the policy are excluded by the policy's breach of contract exclusion.

**I.   BACKGROUND**

The following material facts are not in dispute:

**A.   The Underlying Lawsuit**

In 2014, Autodistributors entered into a franchise agreement with Sixt Franchise USA

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

LLC, which granted Autodistributors the license to use Sixt's trademarks and service marks to rent cars. After the parties' relationship soured, Sixt filed a lawsuit against Autodistributors and its CEO Steven M. Schneider in the United States District Court for the Southern District of Florida (the "Florida Action"), *Sixt Franchise USA, LLC v. Autodistributors, Inc.*, 19-cv-60888-BB, (S.D. Fla. Apr. 3, 2019). *See* Dkt. No. 23-21 (the "Sixt Complaint"). Sixt accused them of infringing its trademarks and breaching the parties' franchise agreement by using its trademarks and service marks for their used car business.

### B. The Policy

Scottsdale issued a commercial general liability policy (the "Policy") to Autodistributors with a coverage period from July 1, 2018 to July 1, 2019. The Insuring Agreement found in Section I of the Policy's commercial general liability coverage section states in relevant part that Scottsdale would defend and indemnify Autodistributors from any lawsuit seeking damages for "personal and advertising injury." *See* Dkt. No. 23-22 at 11. Relevant here, the Policy's definition of "personal and advertising injury" includes "[t]he use of another's advertising idea in your 'advertisement'" and "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" *Id.* at 25. The Policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters," including "that part of a web site that is about your goods, products or services for the purposes of attracting customers." *Id.* at 23.

The Policy also excludes the following from liability coverage:

> f. Breach Of Contract
>
> "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".
>
> . . .
>
> i. Infringement Of Copyright, Patent, Trademark Or Trade Secret
>
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

2

> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

*Id.* at 16-17.

### C. This Litigation

On April 11, 2019, Autodistributors tendered the defense of the Florida Action to its insurer, Scottsdale Insurance Company. Scottsdale denied coverage on May 2, 2019. After this (the complaint does not state when), Autodistributors settled the Florida Action with Sixt.

In May 2021, Plaintiffs Autodistributors and Mr. Schneider sued Scottsdale, as well as Defendants National Casualty Company, Nationwide E&S Specialty, and Scottsdale Indemnity Company in Sonoma Superior Court. Dkt. No. 1-1. Plaintiffs allege that Defendants failed to defend and indemnify them in the Florida Action. Defendants removed the case to this Court in August 2021. Dkt. No. 1. The parties now bring cross-motions on the duty to defend. Dkt. Nos. 22, 23.

## II. LEGAL STANDARD

### A. Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006). "Rule 12(c) is functionally identical to Rule 12(b)(6) and . . . the same standard of review applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quotation omitted). The Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "A court has discretion to permit leave to amend in conjunction with a Rule 12(c) motion and may dismiss causes of action rather than grant judgment." *Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *3 (N.D. Cal. Sept. 22, 2016) (citation omitted). The Ninth Circuit has held that a court need not grant leave to

amend "where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994) (quotations omitted).

### B. Duty to Defend

"An insurer has a very broad duty to defend its insured under California law." *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). According to the California Supreme Court, "the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Super. Court*, 6 Cal. 4th 287, 299 (1993) (emphasis in original).

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the [underlying] complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993), *as modified on denial of reh'g* (May 13, 1993). "Under California law, the insurer's duty is not measured by the technical legal cause of action pleaded in the underlying third party complaint, but rather by the potential for liability under the policy's coverage as revealed by the facts alleged in the complaint or otherwise known to the insurer." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (internal quotation marks omitted and emphasis in original). "It only matters whether the facts alleged or otherwise known by the insurer suggest potential liability or whether they do not." *Id.* at 1269. "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* "If any of the claims in the underlying complaint are covered, the insurer has a duty to defend the entire action." *Manzarek*, 519 F.3d at 1031.

Although broad, the duty to defend is not unlimited. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 19 (1995). Uncertainty regarding the legal interpretation of a policy term will not create coverage. *Id.* at 25-26 ("where only potential for liability turns on resolution of legal question, there is no duty to defend" (citations omitted)).

"The insured has the burden to show that that the underlying claim falls within an insurance policy's coverage.  Once that burden is sustained, the burden is on the insurer to prove the claim is excluded." *James River Ins. Co. v. Medolac Lab'ys*, 290 F. Supp. 3d 956, 966-67 (C.D. Cal. 2018) (citing *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998)). "When an insurer seeks summary judgment 'on the ground the claim is excluded,' the insurer has the burden 'to prove that the claim falls within an exclusion.'" *Id.* (quoting *Imperium Ins. Co. v. Unigard Ins. Co.*, 16 F. Supp. 3d 1104, 1115 (E.D. Cal. 2014)).

### III. DISCUSSION

#### A. Breach of Contract Exclusion

The Policy excludes "'[p]ersonal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.'" Dkt. No. 23-22 at 16.  The parties dispute whether this exclusion bars coverage of any potential claims alleged by the Sixt Complaint.

Dealing with identical breach of contract exclusion language, courts in this Circuit have concluded that the provision "bars coverage of other claims based on the same conduct as that alleged to constitute the breach of contract." *James River Ins. Co. v. Medolac Laboratories*, 290 F. Supp. 3d 956, 958 (C.D. Cal. 2018) (finding that insurer had no duty to defend the insured against unfair competition and intentional interference with prospective economic advantage claims where they "all ar[ose] out of the same conduct alleged to constitute a breach of contract"); *Penn-Star Ins. Co. v. Caden Companies, Inc.*, No. 17-cv-02369-AB (PLAX), 2017 WL 6940535, at *4-5 (C.D. Cal. Dec. 28, 2017) (finding that breach of contract exclusion precluded coverage for non-contractual claims predicated on same underlying facts as contractual ones); *Trenches, Inc v. Hanover Ins. Co.*, No. 12-CV-00627-AG (RNBX), 2012 WL 12507967, at *6 (C.D. Cal. Aug. 10, 2012) (same), *aff'd sub nom. Trenches, Inc. v. Hanover Ins. Co.*, 575 F. App'x 741 (9th Cir. 2014).  This is because "in California, the phrase 'arising out of' is construed broadly to mean 'originating from,' 'flowing from,' 'incident to,' or 'having a connection with,' even if used in an exclusion." *Davis v. Farmers Ins. Group*, 134 Cal. App. 4th 100, 106-07 (2005) (quoting *Fibreboard Corp. v. Hartford Accident & Indem. Co.*, 16 Cal. App. 4th 492, 503-04 (1993)).

5

The district court in *Trenches* observed that courts in California:

> have consistently given a broad interpretation to terms such as "arising out of" in various kinds of insurance provisions. It is settled that this "arising out of" language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.

*Id.* "Significantly, this analysis 'is true even when the term is used in an exclusionary provision and a broad interpretation results in limiting coverage.'" *Id.* (quoting *Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 10 F. App'x. 438, 439-40 (9th Cir. 2001) (finding that breach of contract exclusion precluded coverage of Lanham Act claims because they "all arise out of the factual situation that constituted a breach of contract").

Here, the underlying dispute between Sixt and Plaintiffs concerns the terms of their franchising agreement, and each party's alleged performance and breach. In particular, the Sixt Complaint alleges that Plaintiffs entered into a franchise agreement with Sixt, under which Sixt granted a license to Plaintiffs to use and display Sixt trademarks and service marks, but only in connection with a car rental business. *Id.* ¶¶ 11, 19. The Sixt Complaint alleged that Plaintiffs had used the Sixt trademarks and service marks "in violation of its Franchise Agreement and the Lanham Act" "in connection with a used car sales business, operating at the Store, that is not affiliated with or approved by Sixt Franchise." *Id.* ¶ 52.

As Plaintiffs admit in their complaint, "[u]nder the Franchise Agreement, Auto Distributors was granted the right to use and was obligated to use Sixt's distinctive marks, slogans, advertising material, color scheme, and other intellectual property in Auto Distributors' business operations, including but not limited to its marketing, advertising, and website." Dkt. No. 1 at 15, ¶ 34. In other words, the terms of the franchise agreement govern the right to use Sixt's "distinctive marks, slogans, advertising material, color scheme, and other intellectual property." Thus, any potential liability for Sixt's claims for slogan infringement, trade dress infringement, and the "[t]he use of another's advertising idea in your 'advertisement'" necessarily arises out of the breach of the franchise agreement and is excluded from coverage. *See James River*, 290 F. Supp. 3d at 958 (breach of contract exclusion "bars coverage of other claims based on the same

conduct as that alleged to constitute the breach of contract").

Plaintiffs argue that the exclusion applies only to meritorious breach of contract claims, with the consequence that Defendants' reliance on the exclusion fails because the Sixt Complaint alleged that the franchise agreement was void and the Florida court never decided whether a valid contract was enforceable and breached. Dkt. No. 25 at 25. But Plaintiff identifies no legal authority supporting the contention that the applicability of an exclusion depends on the substantive merits of the underlying claims. "[W]hether or not [Plaintiffs] [are] ultimately held liable for breach of contract in the [Florida] Action is irrelevant to the question of whether the Breach of Contract Exclusion applies. The question is whether the alleged conduct 'arises out of' the conduct underlying the breach of contract claim, as described above." *James River*, 290 F. Supp. 3d at 970.

Next, Plaintiffs contend that the circumstances here fall outside the exclusion, which does not exclude liability based on an implied contract "to use another's advertising idea in your 'advertisement.'" Dkt. No. 25 at 26. Plaintiffs argue that there was an implied contract between Sixt and Plaintiffs to "use Sixt's developed and/or created advertising ideas, slogans, and trade dress in Auto Distributors' own advertisements." Dkt. No. 1 at 25, ¶ 91. They allege that while the franchise agreement called for Plaintiffs to "use only our then-current sign, logo, color scheme and trade dress," Plaintiffs and Sixt had an implied contract regarding the use of Sixt's intellectual property to sell and rent electric scooters. Dkt. No. 25 at 26. But the Sixt Complaint's allegations do not raise the possibility of liability for the use of Sixt's advertising ideas, let alone suggest that the parties had an implied contract to do so. The Sixt Complaint alleges only that Plaintiffs used Sixt's trademarks and service marks outside of the scope of the parties' franchise agreement, which comprehensively detailed the limits of Plaintiffs' authorized use of the relevant intellectual property. Simply asserting that there was some additional implied contract to use Sixt's advertising ideas in Plaintiffs' advertisements is insufficient to place this dispute outside the terms of the exclusion in the face of an express written contract governing the scope of Plaintiffs' use of Sixt's trademarks and service marks. *See Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (Ct. App. 1975) ("There cannot be a valid, express contract and an implied contract, each embracing

7

the same subject matter, existing at the same time.").

Accordingly, even assuming the Sixt Complaint alleges potential liability for slogan infringement, trade dress infringement, and the "[t]he use of another's advertising idea in your 'advertisement,'" such claims "all arise out of the same conduct alleged to constitute a breach of contract" and are precluded by the Policy's breach of contract exclusion. *James River*, 290 F. Supp. 3d at 958. Defendants' motion is granted.[2]

### B. The Court Will Not Convert Defendants' Motion for Judgment on the Pleadings into a Motion for Partial Summary Judgment

Defendants bring their cross-motion on the issue of the duty to defend as a motion for judgment on the pleadings. On the other hand, Plaintiffs bring their cross-motion as one for partial summary judgment because they seek to use materials outside of the pleadings to establish a duty to defend. Plaintiffs ask the Court to convert Defendants' motion into one for partial summary judgment. Dkt. No. 25 at 8 n.1. Defendants object because Plaintiffs' "evidence is irrelevant to the duty to defend." Dkt. No. 26 at 8.

The Court concludes that none of Plaintiff's evidence is relevant to the dispositive question here: the applicability of the breach of contract exclusion under the terms of the Policy. Thus, none of Plaintiff's evidence changes the Court's conclusion of law as to Defendants' motion for judgment on the pleadings, making it unnecessary to convert the motion into one for partial summary judgment.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[2] In light of this conclusion, the Court need not reach the parties' arguments about the Policy's intellectual property exclusion, whether the Sixt Complaint contains the potential for liability under the Policy's coverage, and whether Plaintiffs adequately state theories of agency and joint venture against Defendants Nationwide E&S Specialty, Scottsdale Indemnity Company, and National Casualty Company.

8

# CONCLUSION

For the reasons set forth above, the Court rules as follows:

1. The Court **GRANTS** Defendants' motion for judgment on the pleadings on the basis that Scottsdale did not owe Plaintiffs a duty to defend in the Florida Action.

2. The Court **TERMINATES AS MOOT** Plaintiffs' motion for partial summary judgment.

The Clerk is directed to enter judgment in accordance with this order in Defendants' favor and close the case.

**IT IS SO ORDERED.**

Dated: 8/24/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge